UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 08-113 (TFH)** |
| | : | |
| v. | : | |
| | : | |
| **EDWARD J. ADAMS,** | : | |
| | : | |
| **Defendant.** | : | |

**OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this opposition to Defendant's Motion to Suppress Evidence and Memorandum in Support Thereof (the "Motion" or "Defendant's Motion"). As grounds for this opposition, the United States relies on the following facts and authorities as well as other facts and authorities that may be cited at a hearing on the motion:

1.  In the late afternoon of February 16, 2008, two police officers of the D.C. Housing Authority were on routine patrol when they observed the defendant operating a vehicle that was traveling eastbound on H Street in the northwest quadrant of the District of Columbia. As officers traveled behind the vehicle operated by the defendant, they observed a passenger in the defendant's vehicle jump from the vehicle and run toward H Street. They also observed the vehicle -- from the middle lane in which it traveled -- make a sudden right turn onto Fourth Street. The officers activated their lights and ultimately conducted a traffic stop.

   As the officers approached the defendant's vehicle, they observed that all windows of the defendant's vehicle were rolled down, and each officer perceived an odor that each associated with burnt marijuana. In response to officer request, the defendant produced a driver's permit, but failed to produce registration for the vehicle that he operated. When asked whether he was in

possession of a controlled substance, the defendant advised that there was no controlled substance in the vehicle, but that he had smoked marijuana earlier. The defendant also advised that he was carrying marijuana on his person. Officer removed the defendant from the vehicle, conducted a patdown of the defendant, and recovered from the defendant's sock a clear bag containing a weed-like substance later determined to be marijuana.

As the officers conducted the patdown, another officer who had been observing advised that a bulge in the defendant's pelvic area appeared unusually large. Other officers, who also had observed the defendant attempting to conceal the pelvic area of his body against the vehicle, then patted down this area of the defendant's person and felt a hard object. As the defendant yelled words to the effect of "You can't go in my pants," and tried to conceal his pelvic area from police by clinching his knees to his chest and by rolling onto his stomach, an officer recovered from a jock strap that the defendant was wearing a hard, wet, cookie-shaped object that officers later determined to be 121 grams of crack cocaine. Specifically, the officers recovered the cocaine from a jock strap that the defendant wore beneath khaki pants and atop gym shorts.

A subsequent search of the defendant's person revealed a digital scale (approximately the size of a personal data assistant, like a Blackberry, that fits in the hand). A search of the vehicle that the defendant drove revealed a green, duffle-style piece of luggage that contained numerous items of drug paraphernalia. Later that same evening, pursuant to written consent provided by the defendant's mother, officers searched a room used by the defendant at the home leased by the defendant's mother. There officers recovered additional controlled substances and drug paraphernalia.

2.    Through his Motion, the Defendant, Edward Adams, seeks to suppress all tangible evidence seized by police in connection with defendant's February 16, 2008, arrest. That tangible evidence includes (1) a weed-like substance, later determined to be marijuana, that police officers

2

recovered from the defendant's sock; (2) a cookie-shaped rock substance, later determined to be 121 grams of crack cocaine, that police officers recovered from a jock strap that the defendant wore underneath his outer garment but atop a pair of gym shorts; and (3) a red digital scale that police recovered from the defendant's shirt pocket. The defendant also seeks to suppress the following evidence that was recovered from a piece of green luggage found inside the trunk of the vehicle that defendant was driving at the time of his arrest: (1) a so-called "cooking pot" -- that is, a coffee pot that contained a white powder residue; (2) a strainer; and (3) a baster.[1] Though never specified in his Motion, the defendant also seeks to suppress "other items of evidence" that were recovered from his mother's home after she provided written consent for officers to search the room that the defendant used in the home that she leased. The items seized during that search were: (1) a piece of green luggage (matching that recovered from the trunk of the vehicle the defendant was driving) containing empty ziploc bags and so-called "cooking supplies"; (2) a camouflage-patterned bullet-proof vest; (3) various items of mail matter addressed to the defendant; (4) a glass mirror with residue; (5) green ziploc bags containing a rock substance; (6) an assortment of empty ziploc bags; (7) a clear bag containing approximately four grams of marijuana; (8) two black bags containing approximately one gram of cocaine (in powder form); and (9) a pot containing empty ziploc bags and a 12-ounce can of baking soda.

      3.        With respect to his effort to suppress tangible evidence seized as a result of a search of the room he used in his mother's home, the defendant asserts, in effect, that the search was illegal inasmuch as it was conducted without the defendant's consent, in a place where he had a reasonable expectation of privacy, and locked the door preventing easy access. See Defendant's Motion at 3.

---

[1] The baster is referred to erroneously in the police paperwork as a "thermometer." In the culinary context, the baster, which resembles a very large dropper or a very large thermometer with a squeeze-bulb attached to one end, is used to moisten meats with butter, pan drippings, or other liquids at regular intervals during baking or roasting.

The defendant's argument is moot, however, as the government does not intend to introduce in its case-in-chief any tangible evidence seized from the defendant's room.

4. The defendant also implies, in a very conclusive fashion in the opening paragraph of his Motion, that he seeks to suppress "statements made to the police after his arrest on [February 16, 2008]." Defendant's Motion at 1. However, Defendant's Motion is entirely devoid of any factual or legal support for any suppression of post-arrest statements. The defendant is obliged, in definitive motion papers, to make factual allegations which, if established, would warrant relief. See United States v. Thornton, 147 U.S. App. D.C. 114, 124 n.65, 454 F.2d 957, 967 n.65 (1971). Allegations that are merely conclusory cannot suffice. Id. In the absence of any justification for the perfunctory nature of the defendant's pleading in this regard, this Court should not consider suppression of any post-arrest statement by the defendant.[2]

5. The defendant claims that this Court should suppress the remaining evidence (that is, the marijuana, crack cocaine, and digital scale recovered from the defendant's person as well as the cooking pot, strainer, and baster recovered from the trunk of the car that the defendant drove) because officers lacked reasonable articulable suspicion that criminal activity was afoot and, thus, the drugs and paraphernalia were recovered incident to an unlawful search. See Defendant's Motion at 2-3. The defendant's claim is without merit, however. In fact, the police had probable cause to arrest the defendant at the moment he was unable to produce valid registration for the vehicle he drove, and the drugs and paraphernalia recovered from him and the trunk of the vehicle, therefore, were seized during a search incident to his lawful arrest.

---

[2]In any event, the post-arrest statement that the defendant provided should not be suppressed. Despite the fact that the defendant was in police custody when he provided the statement, a Form PD 47 that was signed by the defendant indicates that the defendant was advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). The defendant's arrest was lawful and there is no evidence that the defendant did not understand his rights or that the defendant's rights were violated.

Once the officers observed the defendant commit a traffic offense by making an illegal turn, they had a reasonable articulable suspicion that justified their stop of the defendant. Terry v. Ohio, 392 U.S. 1 (1968). At that point, based on the valid traffic stop alone, the officers could legitimately have ordered the defendant from his car without violating his Fourth Amendment rights. United States v. Bullock, 510 F.3d 342, 344-45 (citing Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) and concluding that officers did not violate Bullock's rights when they ordered him from his vehicle after he was stopped for a moving violation); Maryland v. Wilson, 519 U.S. 408, 413 n. 1 (1997).

However, officers in the instant case did not order the defendant from the vehicle until after (1) the defendant failed to produce valid registration for the car he drove; (2) officers perceived a smell they associated with the recent burning of marijuana; and (3) in response to an officer's legitimate questions regarding the possession of marijuana in light of the odor perceived,[3] the defendant admitted that he possessed marijuana on his person. Thus, at that point, the officers had more than reasonable articulable suspicion; they were armed with sufficient facts to give them probable cause to believe that the defendant possessed marijuana. See Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) ("Rawlings") (finding that where petitioner had admitted ownership of a sizable quantity of drugs found in the purse of a female acquaintance, police clearly had probable cause to place petitioner under arrest and the search of petitioner's person that uncovered certain money and a knife could be upheld as incident to petitioner's formal arrest even though the search preceded the arrest); see also United States v. Arvizu, 534 U.S. 266, 273 (2002) (concluding that reviewing courts must look at the "totality of circumstances" in evaluating an officer's objective basis for suspecting that a crime has been committed and noting that this process permits "officers to draw on their own

---

[3]An officer may ask questions and conduct "plain smell" observations of a vehicle during a brief investigative detention pursuant to Terry v. Ohio, 392 U.S. 1 (1968).

experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'"); Ornelas v. United States, 517 U.S. 690, 700 (1996) (concluding that a reviewing court must give "due weight" to the factual inferences drawn by law enforcement officers). Moreover, "probable cause is a flexible, common-sense standard" that "does not demand any showing that [an officer's belief that he is perceiving criminal behavior] be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983). The officer's belief need only be based on reasonably trustworthy information at the moment of arrest and it is, therefore, of no import that no marijuana residue or roach clips were ultimately found within the vehicle. Compare Defendant's Motion at 2. Because the officers had probable cause to believe, at the very least, that the defendant possessed marijuana, their search of the defendant's person -- which, in fact, revealed marijuana in his sock -- was lawful and the marijuana should not be suppressed.

Furthermore, even absent the defendant's furtive gestures in connection with his pelvis, upon discovery of the marijuana on the defendant's person, the police, now entitled to make a valid arrest of the defendant, were entitled to conduct a full search of the defendant's person. Chimel v. California, 395 U.S. 752, 763 (1969) (finding, impliedly, that subsequent to defendant's valid arrest for burglary, a search of the petitioner's person for evidence that might have incriminated him, would not have violated petitioner's Fourth Amendment rights). Consequently, the search of the defendant's pelvic area that resulted in the recovery of the 121-gram "cocaine cookie" was not illegal and that evidence should not be suppressed.

Finally, there is no basis to suppress any of the evidence recovered from the trunk of the vehicle that the defendant drove. Once the police placed the defendant under lawful arrest, a warrantless inventory of the defendant's vehicle, including the trunk and closed containers therein, was permissible. See, e.g., Colorado v. Bertine, 479 U.S. 367, 372-73 (1987) (concluding that

inventory searches may include the entirety of a car, including closed containers found therein); Rawlings, 448 U.S. at 111 (finding valid search where search preceded formal arrest, but occurred at a time when police had probable cause to arrest).

WHEREFORE, the United States asserts that no Constitutional infirmity exists here, and respectfully requests that the Defendant's Motion be denied.

        Respectfully Submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. Bar No. 498610

        _____/s/_____
        Renata Kendrick Cooper
        D.C. Bar No. 424248
        Assistant United States Attorney
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        (202) 307-0031
        e-mail: renata.cooper@usdoj.gov